#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN ELLIS PINKERTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 11-CV-421-JED-FHM |
| v. | ) |
| | ) |
| TRANSPORTATION SECURITY | ) |
| ADMINISTRATION, UNITED STATES | ) |
| DEPARTMENT OF JUSTICE, FEDERAL | ) |
| BUREAU OF INVESTIGATION, | ) |
| NATIONAL PERSONNEL RECORDS | ) |
| CENTER, and UNITED STATES OF | ) |
| AMERICA, | ) |
| | ) |
| Defendants. | ) |

### OPINION AND ORDER

Before the Court is the defendants' Motion to Dismiss / Motion for Summary Judgment (Motion) (Doc. 28). The Motion asserts several grounds of dismissal under Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

**I.    Background**

The plaintiff, John Ellis Pinkerton, seeks a declaratory judgment as well as money damages against the defendants, arising out of his assertion that the Department of Justice (DOJ) has maintained inaccurate records in the database maintained by the National Crime Information Center (NCIC). Those records reflect that Mr. Pinkerton has a criminal conviction for second degree murder and a parole violation thereafter. According to Mr. Pinkerton, the maintenance of those records has resulted in a number of problems for him "for the better part of Fifty (50) years." (Doc. 1 at 1-2). Specifically, based upon the reported 1957 conviction for second degree murder, Mr. Pinkerton alleges that has suffered a "loss of his military career and

associated benefits" after he was discharged from the United States Navy in 1957, a loss of his job as an authorized driver with a company in Florida (due to being denied a Hazardous Materials Endorsement (HME) on his commercial driver's license), and the loss or denial of jobs with the Boys & Girls Club of Jay, Oklahoma and other potential employers. (Doc. 1 at 2-3; Doc. 40). Mr. Pinkerton claims that, contrary to the NCIC record, he "*has never . . . ever been charged with, tried for, or convicted of a felony crime, nor legally sentenced to an adult correctional institution*." (Doc. 41 at 1; *see also* Doc. 1 at 2) (emphasis added). He asserts that the NCIC records, upon which the Transportation Security Administration (TSA) relied in denying the HME, are "false and malicious; slanderous and defamatory." (Doc. 1 at 1).

Mr. Pinkerton seeks "some proof of the 'false and malicious, slanderous and defamatory' statements . . ., or an order that they be either destroyed or sealed from public view." (*Id.* at 2). He seeks proof from the defendants of his convictions or, alternatively, a declaratory judgment of the Court under 28 U.S.C. § 2202 that he is "a free born citizen who has never been charged nor convicted of a felony crime and that therefore any statement to the contrary is declared 'false and malicious; slanderous and defamatory.'" (*Id.*). Mr. Pinkerton also requests that the Court award him money damages, in the amount of $6,500,000.00, to compensate for the loss of his military career and associated benefits, physical and mental humiliation, and the loss of jobs. He requests that the Court declare that his military discharge is void and an order that he be returned to duty and then discharged with a service record of 48 years of service and granted compensation for eight years of lost veteran's benefits.

## II.     Standards

Defendants seek dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction *and* pursuant to Rule 12(b)(6) for failure to state a claim. Their Motion is dependent upon the Court's consideration of several documents outside the pleadings (*see* Doc. 28, Exhibits A-C; Doc 43, Exhibit D), and plaintiff has also submitted several materials in response.

Generally, in considering a motion to dismiss, the Court must rely only on the allegations contained in the complaint. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). However, when a party seeks dismissal pursuant to Rule 12(b)(1), challenging the allegations supporting subject matter jurisdiction, the district courts have wide discretion to consider affidavits and other documents to resolve disputed jurisdictional facts. *Id.* at 1003; *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (quoting *Holt*, 46 F.3d at 1003). "In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment]." *Id.*

"As a general rule, a 12(b)(1) motion cannot be converted into a motion for summary judgment under Rule 56." *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987) (citing *Nichols v. United States*, 796 F.2d 361, 366 (10th Cir. 1986)). "However, a court is *required* to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt*, 46 F.3d at 1003 (emphasis added); *see also Wheeler*, 825 F.2d at 259. The merits are intertwined if "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Paper, Allied-Indus., Chem. And Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). This exception provides plaintiffs with the protection of the standards associated with Rule 12(b)(6) and Rule 56 motions, depending on which standard the court chooses to apply. That is, facts are construed in the light most favorable to the non-movant and conflicting factual evidence is not weighed. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986) (noting that a court cannot resolve factual disputes when a motion is converted to one under Rule 56, but can do so under the ordinary 12(b)(1) standard); *Genberg v. Porter*, 935 F. Supp. 3d 1094 (D. Colo. 2013) (in ruling on a

3

typical 12(b)(1) motion, "there is substantial authority that the trial court is free to weigh the evidence").

Here, because defendants moved pursuant to Rules 12(b)(1) *and* 12(b)(6) and the parties rely upon evidence outside the record, the Court converted the Motion and permitted the parties to supplement their submissions. To the extent that defendants have moved under Rule 12(b)(6), or their subject matter jurisdiction argument under Rule 12(b)(1) is intertwined with the merits of plaintiff's claims, the motion will be treated as a Rule 56 motion. Hence, any arguments that are not intertwined with the merits will be resolved under the Rule 12(b)(1) standard applicable to requests for dismissal for lack of subject matter jurisdiction.[1]

### III.   Analysis

#### A.   *Subject Matter Jurisdiction, Generally*

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Subject matter jurisdiction cannot be conferred by the parties, nor can a defect in subject matter jurisdiction be

---

[1]   Pro se pleadings must be liberally construed and must be held to less stringent standards than formal pleadings drafted by lawyers. *See Haines v.. Kerner,* 404 U.S. 519, 520 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nevertheless, a district court should not assume the role of advocate. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("rule of liberal construction [of pro se filings] stops, however, at the point at which we begin to serve as his advocate."); *Garret v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("The court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."). Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and substantive law, and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir.1994); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir.1997).

waived. *United States v. Cotton*, 535 U.S. 625, 630 (2002). Here, plaintiff cites 28 U.S.C. § 2201 as a basis for the Court's jurisdiction, and he generally refers to the First Amendment of the Constitution (Doc. 1 at 2), and to a denial of Equal Protection and Due Process (Doc. 41 at 3). The statute (§ 2201), by its terms, does not convey subject matter jurisdiction to the Court where such jurisdiction does not already exist. *See* § 2201 (a court may declare rights in cases of "actual controversy *within its jurisdiction*"). Assuming that Pinkerton is attempting to state a claim under 42 U.S.C. § 1983 for a violation of Due Process, Equal Protection, or First Amendment rights, he has not explained, and the Court has not identified, any nexus between those rights and his allegations, and he has presented no evidence which would support any such claims. Summary judgment is accordingly appropriate on any such alleged constitutional claims.

      *B.*     *Plaintiff's Claims against the United States, the DOJ, and the FBI*

The records upon which Mr. Pinkerton bases his claims are maintained on the NCIC system. The NCIC computer system "is a national criminal records data system administered by the Federal Bureau of Investigation [FBI]. NCIC contains criminal history information. . . ." *United States v. Martinez-Jimenez*, 464 F.3d 1205, 1210 (10th Cir. 2006) (citation omitted). The NCIC system is maintained pursuant to 28 U.S.C. § 534, which requires that the Attorney General "acquire, collect, classify, and preserve identification, criminal identification, crime, and other records" and to "exchange such records and information with, and for the official use of, authorized officials of the Federal Government, . . . the States [and other entities]." The Attorney General's power and authority has been delegated to the FBI's CJIS division.

The United States, the DOJ, and the FBI seek dismissal, noting that Mr. Pinkerton has not alleged the existence of any statute that authorizes this Court to grant any of the relief he seeks against the United States, the DOJ, or the FBI. Construing Mr. Pinkerton's pleading liberally,

5

these defendants assert that the only conceivable claim is a request for expungement of his criminal history records, under federal law or the Court's inherent authority. (*See* Doc. 28 at 4 and cited authority).[2] The defendants argue that neither ground authorizes relief under the circumstances alleged by Mr. Pinkerton, because the statute governing the NCIC records does not provide any private right of action to request expungement, and the Court should decline any inherent authority to order expungement. (Doc. 28 at 4-5). Mr. Pinkerton does not respond directly to those arguments by the defendants, but he insists repeatedly that he has "never, ever" been charged, convicted, or sentenced for any crime. (*See, e.g.,* Doc. 41 at 1; Doc. 1 at 2).

On its face, the statute directing the maintenance of NCIC records does not provide any private right of action in federal court to seek expungement of the NCIC record or any underlying state criminal records. *See* 28 U.S.C. § 534. No other federal statute provides the federal courts with jurisdiction to expunge the NCIC records.

The Second, Seventh, Tenth and D.C. Circuits have concluded that federal courts have power, in limited circumstances, to expunge criminal records and convictions on equitable grounds. *See, e.g., United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977); *United States v. Flowers*, 389 F.3d 737, 379-40 (7th Cir. 2004); *United States v. Pinto*, 1 F.3d 1069, 1070 (10th Cir. 1993); *Livingston v. United States Dept. of Justice*, 759 F.2d 74, 78 (D.C. Cir. 1985). In *Pinto*, the Tenth Circuit expressly stated that a federal court may order expungement for an acquittal, but not for a valid conviction because "there is a large difference between expunging the arrest record of a presumably innocent person, and expunging the conviction of a person

---

[2] In his supplemental response, Mr. Pinkerton asserts that he "is not looking for expungement of any criminal record. He is looking for a legal declaration that there is not, nor has there ever been any criminal record." (Doc. 41 at 2). Yet, his original pleading asks that the Court enter "an order that [the NCIC records] be either destroyed or sealed from public view." (Doc. 1 at 2).

adjudged as guilty in a court of law." 1 F.3d at 1070. Other courts, including the First, Eighth, and Ninth Circuits, have determined that federal courts lack jurisdiction to expunge criminal records solely for equitable considerations. *See United States v. Coloian*, 480 F.3d 47, 50-52 (1st Cir. 2007); *United States v. Meyer*, 439 F.3d 855, 859-62 (8th Cir. 2006); *United States v. Sumner*, 226 F.3d 1005, 1010-15 (9th Cir. 2000).

Unlike the Washington State record involved in this case, in the foregoing cases where the courts found inherent federal court jurisdiction to expunge, the criminal records at issue involved *federal* criminal charges. None of the cases directly provides a basis for subject matter jurisdiction of this Court to order expungement of a state record of conviction. Moreover, to the extent that a federal court has any equitable power to order the expungement of records, such power is used only "in extreme circumstances," for example, to expunge the criminal record of a person who has no convictions. *United States v. Pinto*, 1 F.3d 1069. Thus, even if subject matter jurisdiction were conferred on this Court to order the expungement of an NCIC record, such jurisdiction would have to be exercised only in extreme circumstances.

According to the defendants, the circumstances alleged by Mr. Pinkerton do not constitute such extreme circumstances that would warrant an exercise of any inherent authority, because "[t]he evidence demonstrates Pinkerton's convictions and Pinkerton has offered no evidence to the contrary. . . ." (Doc. 28 at 13-14). The Court agrees. The undisputed record in this case establishes that there is no genuine dispute as to Mr. Pinkerton's conviction. As required to obtain a HME to transport hazardous materials, Mr. Pinkerton applied to the TSA for a security threat assessment. *See* 49 C.F.R. 1572.15. Under applicable regulations, the TSA must determine that an applicant poses a security threat warranting denial of an HME if the "applicant has a disqualifying criminal offense described in 49 C.F.R. 1572.103." 49 C.F.R.

1572.5(a)(1). As to Mr. Pinkerton, the TSA processed his application and determined that he is disqualified because his criminal history record reflected a 1957 second degree murder conviction in Washington, which is a permanent disqualifying criminal offense as defined in 49 C.F.R. § 1572.103(a)(8). That determination was based upon the NCIC record maintained by the FBI, which reflects that Mr. Pinkerton was charged and convicted with murder in the second degree and sentenced to not more than 20 years. (Doc. 1 at 6). The NCIC record further indicates that he was sentenced on February 26, 1957, he was paroled on July 24, 1961, and was later arrested on March 13, 1962 for a parole violation on murder in the second degree, for which he was again incarcerated from May 1, 1962 to October 27, 1966. (*Id.* at 6-8).

Despite his contention that he has never even been charged, much less convicted or sentenced, for any crime, Mr. Pinkerton has himself submitted records that establish the exact opposite. He supplied the Information from Lewis County, Washington, charging him with Murder in the second degree and alleging that, on "the 2nd day of October, 1954, under circumstances not amounting to murder in the first degree, [Mr. Pinkerton] did kill a human being, to-wit, his sister, Nella Elvera Pinkerton, the killing being committed with the design to effect the death of said Nella Elvera Pinkerton, but without premeditation." (Doc. 41 at 4). He also supplied a Judgment, Sentence and Commitment from that court, which indicates that Mr. Pinkerton entered a plea of guilty to the second degree murder charge. (Doc. 41 at 5). Following the plea of guilty, the court adjudged Mr. Pinkerton "guilty of the crime of murder in the second degree as charged in the Information," and ordered "that he be punished therefor by confinement in the State reformatory of the State of Washington for not more than twenty (20) years." (*Id.* at 5-6).

Notwithstanding these records, Mr. Pinkerton asserts that he was not convicted or even charged, as "[t]here was no trial, no jury." (Doc. 5 at 1-2). There was no trial and no jury because Mr. Pinkerton entered a guilty plea. (*See* Doc. 41 at 5-6). He was convicted, sentenced, and imprisoned for second degree murder following the guilty plea. (*Id.*). The applicable regulations define "convicted" as follows:

> Convicted means any plea of guilty or nolo contendere, or any finding of guilt, except when the finding of guilt is subsequently overturned on appeal, pardoned, or expunged. . . In addition, where an individual is allowed to withdraw an original plea of guilty or nolo contendere and enter a plea of not guilty and the case is subsequently dismissed, the individual is no longer considered to have a conviction. . . .

49 C.F.R. § 1570.3.

As noted, there is no statutory authority for the relief Mr. Pinkerton seeks. Assuming the Court has any jurisdiction to consider expungement of his state court criminal record, the Court does not find there to be any genuine dispute of material fact relating to the conviction such as would warrant expungement under the authorities cited above.

To the extent that Mr. Pinkerton's Complaint may be construed as a request for correction of an FBI identification record, he has not exhausted his administrative remedies. Department of Justice regulations set forth the procedures for the subject of an identification record to request production of that record for review, as well as the procedures to obtain a change or correction of that record. 28 C.F.R. §§ 16.30-16.34. An FBI identification record includes the name of the agency that submitted the fingerprints to the FBI, the date the individual was arrested or received by the submitting agency, the arrest charge and, if known to the FBI, the disposition of the arrest. 28 C.F.R. § 16.31. (*See also* "Criminal Justice Department Rap-sheet" filed by Mr. Pinkerton, Doc. 1 at 4-7).

Pursuant to 28 C.F.R. § 16.34, if, after reviewing his identification record, a subject believes it is incorrect and wishes to change, correct or update the alleged deficiency, he may apply directly to the agency which contributed the questioned information. "Challenges to FBI arrest and conviction records, e.g., for correction or expungement, are properly brought at the state or local level in the first instance." *Tarlton v. Saxbe*, 407 F. Supp. 1083, 1084-85 (D.D.C. 1976). Upon receipt of an official communication directly from the agency which contributed the original information (here, in the State of Washington), the FBI CJIS would make any changes necessary in accordance with the information supplied by that agency.

Mr. Pinkerton has also not provided any evidence to establish that he requested from the FBI CJIS division a copy of his record, as authorized by 28 C.F.R. § 16.33. "A person states a claim against the FBI only if the FBI violates a duty owed to that person, such as contravening its own regulations." *Pruett v. Levi*, 622 F.2d 256, 257 (6th Cir. 1980). *See also Crow v. Kelley*, 512 F.2d 752, 754-55 (8th Cir. 1975). Mr. Pinkerton has not provided any evidence to establish that the FBI violated any regulation. "[U]nless the FBI has violated a duty which it owes to a person, such as contravening its regulations in some manner, it has not injured a person. The mere existence of an [alleged] inaccuracy in the FBI criminal files is not sufficient for [a plaintiff] to state a claim of a constitutional injury." *Pruett,* 622 F.2d at 258.

Any claims by Mr. Pinkerton against the United States, DOJ, or the FBI that are based upon tort liability must also be dismissed. "The United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). No action may lie against the United States unless authorized by Congress. *Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir. 2006). The remedy against

10

the United States provided by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1) and §§ 2671-2680, for damages allegedly arising from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim. 28 U.S.C. § 1346(b)(1).

The United States has not waived sovereign immunity for claims arising out of libel or slander, and any such claims by Pinkerton are thus barred. *See* 28 U.S.C. § 2680(h) (expressly exempting libel and slander from the list of claims for which immunity is waived). To the extent Pinkerton's Complaint can be construed as a claim based upon any other tort, he has failed to provide evidence to establish that he has exhausted his administrative remedies as required under 28 U.S.C. §§ 2401(b), 2675(a), and 28 C.F.R. § 14.2 to bring a claim under the FTCA.

For the foregoing reasons, the plaintiff's claims against the United States, the DOJ, and the FBI are dismissed.

### C.     *Claims Against the TSA*

Mr. Pinkerton's claims against TSA arise out of alleged injuries from the TSA's determination under 49 C.F.R. § 1572.103 that Pinkerton was disqualified from holding a HME on a commercial driver's license because of his conviction of a permanently disqualifying criminal offense. As noted above, the undisputed record evidence establishes that Mr. Pinkerton was convicted of second degree murder. Thus, for the same reasons set forth above as to the other defendants, Pinkerton has not provided any evidence to establish any genuine dispute regarding that conviction or its use by the TSA in its determination that he is not eligible for a HME.

With respect to his interactions with the TSA, the undisputed evidence shows that, on April 1, 2008, TSA sent Mr. Pinkerton a letter informing him of its Initial Determination of Threat Assessment (IDTA), in response to his application for a security threat assessment in connection with his application for HME. In that letter, the TSA explained that it had determined or suspected that he posed a security threat because his criminal history record showed that he was convicted of Second Degree Murder as well as a Parole Violation. (Doc. 28-1). TSA further explained that the IDTA was not a final determination and that Pinkerton had an opportunity to file an appeal, or waiver, and seek the materials TSA used as the basis for the initial determination. (*See id.* at 2).

By letter of April 15, 2008, Pinkerton requested a copy of the records TSA relied upon to make its determination. On April 22, 2008, TSA provided Pinkerton with the fingerprint-based "Criminal Justice Department Rap-sheet" maintained by the NCIC. (*See* Doc. 28-2). The fingerprint-based Rap-sheet indicated Pinkerton's convictions for Second Degree Murder on February 25, 1957, and for a Parole Violation on March 13, 1962. (Doc. 1 at 4-7).

By letter dated May 24, 2008, Pinkerton asked that TSA reconsider its decision and explained that he had an outstanding record of citizenship over the past 50 years and that, although he had been in prison, he was never convicted of a crime and that he had "proved that in a writ of habeas corpus" in the U.S. District Court for the Eastern District of Washington in 1966 but that the state released him from prison before the court made a final ruling. (*See* Doc. 28-3). On August 7, 2008, TSA requested that Pinkerton produce official court documents reporting the disposition of Pinkerton's cases following the charges for Second Degree Murder and the Parole Violation. TSA also requested that, if Pinkerton were unable to obtain such documentation, he provide a letter explaining the circumstances of the offenses, including dates

12

of release from incarceration and supervision and why his parole was violated. TSA also explained that he could provide supporting documentation verifying his rehabilitation into the community since his release from incarceration. (*Id.*). The letter further notified Pinkerton that, if he took no further action, the TSA security threat assessment would automatically become final 30 days after the date of service of the letter, and he would not be permitted to renew or obtain a HME on his commercial driver's license. (Doc. 43-1). Pinkerton did not respond to TSA's request for additional information, and its determination became final.[3]

This Court lacks jurisdiction to review the TSA's determination. Judicial review of certain orders issued by TSA is governed by 49 U.S.C. (chapter 461) § 46110. Under § 46110, "[a] person disclosing a substantial interest in an order issued . . . in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the Court of Appeals of the United States for the circuit in which the person resides." 49 U.S.C. § 114(v)(5) provides that the above-referenced Chapter 461 shall apply to a broad range of investigations and proceedings brought under Title 49 (with certain exceptions not pertinent here) to the same extent that it applies to investigations . . . as to aviation security. . . . The TSA's order denying Mr. Pinkerton a HME on his commercial driver's license was issued pursuant to Title 49, specifically 49 U.S.C. §§ 40113, 46105, and 5103a, and judicial review is accordingly governed by § 46110. The petition must be filed in

---

[3] Mr. Pinkerton could have pursued this matter by responding to TSA's request for additional information relating to rehabilitation in the community, which might have supported a case for waiver under 49 C.F.R. § 1515.5, or by providing official court documents regarding the disposition of his cases, which might have supported an appeal under 49 C.F.R. § 1515.7. Although TSA gave Pinkerton an opportunity to submit both types of documentation in support of his complaint, he failed to do so and the Agency's threat assessment became final.

the court of appeals within 60 days of the issuance of the challenged order, unless there are "reasonable grounds for not filing by the 60th day." *Id.*

Because TSA's revocation of Pinkerton's HME is an order exclusively reviewable in the United States Courts of Appeals, this Court does not have jurisdiction over his claims against TSA, and they should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *See, e.g., Boniface v. U.S. Dep't of Homeland Sec.*, 613 F.3d 282 (C.A.D.C. 2010) (providing chart showing options of appellate review ending in the court of appeals); *Roberts v. Napolitano,* 798 F. Supp. 2d 7, 12 (D.D.C. 2011); *Durso v. Napolitano,* 795 F. Supp. 2d 63 (D.D.C. 2011); *see also Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195 (10th Cir. 2004) (Court of Appeals exercising jurisdiction over FAA order pursuant to same statute). The Court also notes that Pinkerton filed his Complaint well after the expiration of the 60 day statutory time limit to challenge a TSA order under 49 U.S.C. § 46110(a). TSA notified Mr. Pinkerton that the IDTA would become final 30 days after service of its April 7, 2008, letter (Doc. 43-1), and Pinkerton did not file his Complaint in this Court until July 6, 2011.

To the extent Pinkerton's Complaint can be construed as an allegation that TSA's revocation order resulted in some sort of constitutional violation, such claims are likewise beyond the jurisdiction of this Court. District courts are precluded from hearing matters that are "inescapably intertwined" with orders falling within exclusive review statutes such as § 46110. *See, e.g., Durso*, 795 F. Supp. 2d at 69-72; *Doe v. Fed. Aviation Admin.*, 432 F.3d 1259, 1263 (11th Cir. 2005).

    D.    *Claims Against the National Personnel Records Center*

To the extent that the National Personnel Records Center (NPRC) is included in claims by Pinkerton against defendants for monetary damages as claimed in his "Prayer for

14

Judgement," this Court lacks jurisdiction over such claims for reasons discussed above with regard to other defendants. Moreover, Pinkerton has failed to state any cause of action against NPRC. The Court provided Mr. Pinkerton with an opportunity to provide any and all evidence, by virtue of supplementing the record (Doc. 39), but he has provided no evidence, allegation, or argument to support any claim against NRPC.

Also, as noted by the defendants (and not disputed by plaintiff), the records at issue belong to the Department of Defense, United States Navy, and the NPRC does not possess legal custody of Pinkerton's military records. Only the Department of Defense, United States Navy, may alter or amend Pinkerton's military records upon a request by Pinkerton, which request must be made pursuant to the Privacy Act, *see* 5 U.S.C. § 552a(d). Pinkerton provides no evidence, allegation or argument to dispute these facts.

Any claims against NRPC are dismissed.

### IV.     Conclusion

For the foregoing reasons, the defendants' Motion to Dismiss / Motion for Summary Judgment (Doc. 28) is hereby **granted** pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 56. The plaintiff's claims against all defendants are hereby dismissed. A separate Judgment will be entered forthwith.

**SO ORDERED** this 31st day of March, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE